UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

DOUGLAS WALKER,

        Petitioner,

v.                                     Case No. 1:09-cv-165-MP-GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner, an inmate in the custody of the Florida Department of Corrections ("FDOC"), initiated this case by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). The Petition stems from a prison disciplinary report ("DR") and conviction at Charlotte Correctional Institution ("Charlotte C.I.")[1] on the charge of fighting, for which Petitioner was sentenced to 30 days in administrative confinement and punished by the loss of 30 days of accrued gain time. Petitioner unsuccessfully pursued administrative and state-court remedies before filing the instant Petition.

In the Petition, Petitioner asserts that he was denied due process during the disciplinary proceedings because: (i) the disciplinary team relied solely upon the disciplinary report in convicting Petitioner and did not adequately explain what evidence it relied upon in convicting Petitioner; (ii) Officer Fuqua, the officer who performed the

---

[1] In his Response, the Respondent states the events in the Petition took place while Petitioner was housed as Florida State Prison. The Petition and the disciplinary report in question, however, both reference the events as having taken place at Charlotte Correctional Institution.

investigation of the DR, denied Petitioner the right to submit a witness statement, to call witnesses, to submit a written statement as part of the disciplinary record, to present his claim of self-defense, and to present documentary or physical evidence; (iii) the disciplinary team did not allow Petitioner to present either his "spontaneous reflective defense" or his claim of self-defense at his disciplinary hearing; (iv) the names of all the correctional officers who purportedly witnessed the fight between Petitioner and his cellmate were not listed in the DR's statement of facts; (v) Sergeant Assmann, the FDOC officer who wrote the DR, was not actually conducting a security check when he observed the fight between Petitioner and his cellmate as stated in the DR; and (vi) Petitioner's requests for a cell transfer prior to the fight were ignored.  The Respondent filed a response and exhibits (Doc. 12), and Petitioner filed a reply (Doc. 14).  For the following reasons, the undersigned recommends that the Petition be denied.[2]

## Factual and Procedural History

Petitioner was charged with violating Fla. Admin. Code § 33-601.314(2-4), which prohibits FDOC inmates from fighting.  The charging report, prepared by Sergeant J.R. Assmann,[3] included the following statement of facts:

> At approximately 0730 hours on 5-28-05 while assigned as G Dorm Supervisor and while conducting a security check of Three Quad I observed Inmate Walker, Douglas 637039 of G3111U and Inmate Washington Alphonoso 386692 of G3111L fighting, striking each other with closed fists to the torso.  After numerous orders to stop fighting they eventually complied and were removed from the cell and seen by medical.

---

[2] Because the Court may resolve the Petition on the basis of the record, an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

[3] There are two different spellings of Sergeant Assmann's name reflected in the record: Assman and Assmann.  The Court will utilize the latter spelling, as that is the spelling reflected in the DR.  App. Exh. B. at 14; Doc. 1 Exh. A.

Inmate written a disciplinary report for 2-4 fighting.

App. Exh. B. at 14.  Petitioner was provided with a copy of the disciplinary charges in connection with this incident on May 31, 2005 by the investigating officer, Officer Fuqua.  *Id.*

Petitioner declined staff assistance when he was interviewed by Officer Fuqua. *Id.* at 16.  According to the investigation report prepared by Officer Fuqua, Petitioner was provided with a copy of the disciplinary charges and Petitioner then told Officer Fuqua to "go to G Dorm and ask who would be his [Petitioner's] witness" before Petitioner would sign the disciplinary charge sheet or participate in the investigation.  *Id.* Officer Fuqua refused to do so and Petitioner then refused to cooperate with the investigation, telling Fuqua "I ain't doing or giving you shit then."  *Id.*  Due to Petitioner's refusal to be interviewed, Officer Fuqua filled out a Witness Statement form indicating Petitioner refused to be interviewed.  *Id.* at 17-18. Officer Fuqua also offered Petitioner the opportunity to call witnesses and present documentary or physical evidence on his behalf, but Petitioner refused to present witnesses or evidence.  *Id.* at 18, 20. Accordingly, Officer Fuqua prepared Witness Disposition[4] and Documentary or Physical Evidence Disposition forms reflecting Petitioner's refusal to be interviewed and to present witnesses or evidence.  *Id.*  Officer Fuqua also interviewed Sergeant Assmann, who stated the disciplinary report was "true and correct as written," and also attempted to interview Petitioner's cell-mate, Alphonso Washington, who refused to be

---

[4] Petitioner provides a slightly different version of the Witness Disposition form as an exhibit to the Petition than the copy provided as an exhibit to the Response.  Doc. 1 Exh. C; Doc. 12 Exh. B at 18.  The only difference between the two is that the version Petitioner provides as an exhibit to the Petition reflects Officer Fuqua marked an "X" next to boxes indicating Plaintiff did not intend to present any witnesses and next to the box where Plaintiff was to sign his name.  *Id.*

interviewed.  *Id.* at 16.  Officer Fuqua then filled out a Witness Statement reflecting Washington's refusal to provide a statement.  *Id.* at 19.

Petitioner's disciplinary hearing on the DR was conducted on June 3, 2005.  *Id.* at 22.  Petitioner was present at the disciplinary hearing but refused to enter a plea to the charges.  *Id.*  The witness statements were read and Petitioner was convicted of the disciplinary charges.  *Id.* The basis for the conviction read as follows: "Team finds Inmate Walker guilty based on Sgt Assman's statement that he saw both inmates striking each other.  Inmate Walker stated to DR Hearing Team that he was punched then comenced [sic] to whipping Washington's ass."  *Id.*

Plaintiff was sentenced to the loss of 30 days of gain time and 30 days in disciplinary confinement as a result of his conviction on the disciplinary charges.  *Id.*  After the disciplinary hearing, Petitioner was provided with a copy of the Disciplinary Hearing Worksheet form evidencing the disciplinary team's decision and was also advised of his right to appeal the disciplinary conviction.  *Id.*  Plaintiff then filed a series of three formal grievances at the institutional level and four grievance appeals to the FDOC's Bureau of Inmate Grievance Appeals in connection with his disciplinary conviction.  *Id.* at 23-41; Doc. 1 Exh. C1-C28.  Each of these grievances and grievance appeals were denied.  *Id.*

Petitioner then filed a petition for a writ of mandamus in the Circuit Court of the Second Judicial Circuit in and for Leon County on August 31, 2006.  App. Exh. C.  In this petition, Petitioner alleged his due process rights were violated in connection with his disciplinary conviction because 1) the names of all the officers that were present as witnesses were not included in the DR's statement of facts; 2) Sergeant Assmann was

4

not actually conducting a security check when he witnessed Petitioner and his cellmate fighting as the DR's statement of facts indicates; 3) the investigating officer, Officer Fuqua, refused to allow Petitioner the ability to submit his written defense of self-defense into the record; 4) Petitioner had previously told correctional officers at Charlotte C.I. he and his cellmate did not get along and the officers did not separate Petitioner and his cellmate despite having a duty to do so; 5) the disciplinary hearing team relied solely on the reporting officer's statement in determining guilt; 6) the disciplinary hearing team's basis for its decision did not adequately explain the evidence it relied upon besides Sergeant Assmann's account; 7) the investigating officer did not interview additional witnesses; 8) the investigating officer did not incorporate signed witness statements into the record; 9) Petitioner was not allowed to present physical or documentary evidence at his disciplinary hearing; and 10) Petitioner had the right to staff assistance in challenging the DR. *Id.*

The state court denied Petitioner's petition for a writ of mandamus on March 7, 2007. App. Exh. G. In support of its decision, the state court concluded Petitioner had received all the due process protections he was entitled to under *Wolff v. McDonnell* and *Sandin v. Conner*: (i) advance written notice of the charges against him; (ii) an opportunity, where consistent with institutional and correctional goals, to present witnesses and documentary evidence in his defense; and (iii) a written statement by the fact-finder of the evidence relied upon and the basis for the disciplinary action. *Id.* at 2. In support of this conclusion, the state court noted the following:

> Although the petitioner argues that his statement was not taken during the investigation, that witnesses were not interviewed, and that he did not have an opportunity to request physical or documentary evidence,

5

> the record shows that the petitioner was offered the opportunity to do all these things but refused to participate in the investigation. Res. Ex. C, D, E, and F.
> 
> The petitioner contends that the institution had a legal duty to separate him from his roommate. However, the record indicates that petitioner did not fill out the paperwork either for placement in protective management or for a new housing assignment until after his disciplinary hearing.
>
> To [the] extent that the petitioner claims that the department violated its own regulations, he is not entitled to relief. The role of the court is not to determine whether disciplinary hearings comport with every detail in administrative regulations but instead to determine where the hearing comports with due process. See Black v. Warren, 134 F.3d 733, 734 (5th Cir. 1998). Where a petitioner has received all process due under Wolff, any *de minimis* violations of agency rules which may have occurred will not result in judicial relief from agency action. Id. Moreover, regarding the petitioner's claim that the disciplinary report did not list staff witnesses, the Department's rule no longer requires that staff witnesses be listed in the disciplinary report's statement of facts. See Rule 33-601.304(2), Fla. Admin. Code.
>
> The petitioner's claims challenging the sufficiency of the evidence are without merit. The standard of proof from a prison disciplinary hearing is 'some evidence from which the conclusions of the administrative tribunal could be deduced.' Superintendent, Massachusetts Correctional Institution v. Hill, 472 U.S. 445 (1985). The disciplinary hearing worksheet stated that the basis for the decision was Sgt. Assmann's statement, together with the petitioner's admission. This evidence more than satisfies the 'some evidence' standard. Further, self-defense is not a mitigating factor in prison disciplinary proceedings. See Rule 33601.314(2-4), Fla. Admin. Code. The petitioner is not entitled to have the hearing team or this court reweigh all the evidence and find in his favor.
>
> The petitioner has failed to show that the department violated due process, abused its discretion, or otherwise departed from the essential requirements of law. Accordingly, the court finds that extraordinary relief is hereby denied.

*Id.* at 3-4.

Petitioner filed a motion for rehearing with the state court on March 16, 2007, which denied the request on April 17, 2007 in an order which also prohibited Petitioner from commencing any further actions in that court unless represented by counsel or

unless the action was a bona fide petition for habeas corpus relief.  App. Exhs. H and I.  Petitioner then appealed the denial of his petition for a writ of mandamus to the First District Court of Appeal, which affirmed *per curiam* without a written opinion.  App. Exh. J.  Petitioner then filed a petition for a writ of mandamus in the Florida Supreme Court, which the Florida Supreme Court transferred to the First District Court of Appeal on December 31, 2008.  App. Exhs. K and L.  The First District Court of Appeal denied the petition for a writ on mandamus on the merits on May 15, 2009 and denied Petitioner's subsequent motion for rehearing on the denial of his petition for a writ of mandamus on July 1, 2009.  App. Exh. L.  Petitioner then handed the instant Petition to prison officials for mailing on June 1, 2009.  Doc. 1 at 15.

## Standard of Review

A state prisoner who is deprived of gain time as the result of a prison disciplinary proceeding that allegedly violated due process may seek federal habeas review, but such review is governed by the restrictions set forth under 28 U.S.C. § 2254.  *Medberry v. Crosby*, 351 F.3d 1049, 1054 (11th Cir. 2003).  Under § 2254, a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  § 2254(d).  Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by

clear and convincing evidence."

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-06 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002)(citing *Williams*).  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams,* 529 U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor*] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8  (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652 (2004).

The Supreme Court has held that when a prison disciplinary proceeding may result in the loss of time credits, a prisoner is entitled to the following three procedural protections: (1) advance written notice of the charges and at least 24 hours to prepare a defense; (2) an opportunity, consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his own behalf; and (3) a written statement by the factfinder of the evidence relied upon and the reasons for the disciplinary action.  *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974).  Due process

standards are satisfied if the findings of the disciplinary officer are supported by "some evidence." *Sup't, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

## Discussion

In the Petition, Petitioner claims his due process rights were violated because: (i) the disciplinary team relied solely upon the DR in convicting Petitioner and did not adequately explain what evidence it relied upon in convicting Petitioner; (ii) Officer Fuqua, the officer who performed the investigation of the DR, denied Petitioner the right to submit a witness statement, to call witnesses, to submit a written statement as part of the disciplinary record, and to present documentary or physical evidence; (iii) the disciplinary team denied Petitioner the opportunity to present his "spontaneous reflective defense" or his claim of self-defense; (iv) the names of all the correctional officers who purportedly witnessed the fight between Petitioner and his cellmate were not listed in the DR's statement of facts; (v) Sergeant Assmann was not actually conducting a security check when he observed the fight between Petitioner and his cellmate as stated in the DR; and (vi) Petitioner's requests for a cell transfer prior to the fight were ignored.[5] (Doc. 1 at 6-9.) Petitioner's claims are all meritless, as he was provided with all the process he was due under *Wolff v. McDonnell* and the disciplinary team's conclusion was supported by some evidence. The Court will review whether Petitioner received due process under *Wolff* before examining each of the six claims for relief presented in the Petition individually.

---

[5] The only ground Petitioner presents in the Petition is described generically as the following: "Petitioner denied his constitutional rights to due process in connection with prison discipline." Doc. 1 at 4. Grouped under that heading, however, are six disparate due process claims, each of which the Court will address individually.

### (1) Petitioner Received All The Required Due Process Protections under *Wolff*

As a preliminary matter, it is clear from the record that Petitioner received all the due process protections required by *Wolff* in the prison disciplinary context. As previously stated, the Supreme Court held in *Wolff* that when a prison disciplinary proceeding may result in the loss of time credits, a prisoner is entitled to: (1) advance written notice of the charges and at least 24 hours to prepare a defense; (2) an opportunity, consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his own behalf; and (3) a written statement by the factfinder of the evidence relied upon and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-66.

The state court correctly determined Petitioner received all the process he was due under *Wolff*. App. Exh. G at 2. In this case, Petitioner received advance written notice of the charges against him on May 31, 2005, as well as a four day period of time in which to prepare a defense for the June 3, 2005 disciplinary hearing. App. Exh. B. at 14, 22. Petitioner was given the opportunity to submit a written witness statement of his version of the fight and to request and present witnesses and physical and documentary evidence in support of his position, but he refused to do so. *Id.* at 18, 20. He even went so far as to state "I ain't doing or giving you shit then" to Officer Fuqua. *Id.* at 16. Finally, Petitioner was given a copy of the Disciplinary Hearing Worksheet form evidencing the disciplinary team's decision as well as the basis for that decision. *Id.* at 22. Accordingly, Petitioner received all the due process protections he was entitled to under *Wolff* in connection with his disciplinary conviction for fighting at

Charlotte C.I.

### (2)  Sufficient Evidence Supported Petitioner's DR Conviction

Petitioner contends the disciplinary team violated his due process rights by either relying solely upon the disciplinary report or by failing to adequately explain what evidence it relied upon and why it relied upon that evidence. This ground is without merit, as sufficient evidence supported Petitioner's disciplinary conviction for fighting, and the disciplinary team specifically informed Petitioner in the Disciplinary Hearing Worksheet of the evidence it relied upon in convicting him.

The state court properly rejected Petitioner's challenge to the sufficiency of the evidence upon which he was convicted, noting that the disciplinary conviction was supported by "some evidence" in accordance with *Hill*:

> The petitioner's claims challenging the sufficiency of the evidence are without merit. The standard of proof from a prison disciplinary hearing is 'some evidence from which the conclusions of the administrative tribunal could be deduced.' Superintendent, Massachusetts Correctional Institution v. Hill, 472 U.S. 445 (1985). The disciplinary hearing worksheet stated that the basis for the decision was Sgt. Assmann's statement, together with the petitioner's admission. This evidence more than satisfies the 'some evidence' standard.

App. Exh. G at 3-4.

"The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." *Hill*, 472 U.S. at 457. It is clear that Petitioner's disciplinary conviction was supported by at least some evidence in the form of Sergeant Assmann's report and Petitioner's own statement at the disciplinary hearing that "he was punched

11

then comenced [sic] to whipping Washington's ass." App. Exh. B. at 14, 22. This was sufficient evidence to support Petitioner's disciplinary conviction for fighting. *See Hill*, 472 U.S. at 456 (prison guard's testimony and copies of his written report supported conclusion that the evidence before the disciplinary board was sufficient to meet the requirements imposed by the Due Process clause); *Brown v. Frey*, 807 F.2d 1407, 1414 (8th Cir.1986)(witnessing officer's violation report satisfied the "some evidence" standard). Furthermore, as the state court also noted, the disciplinary team explicitly informed Petitioner it was relying upon this evidence in convicting Petitioner of the charge of fighting in the Disciplinary Hearing Worksheet. App. Exh. B at 22. Accordingly, Petitioner has not shown that the state court's rejection of his due process claim regarding the sufficiency of the evidence supporting his disciplinary conviction was contrary to, or an unreasonable application of, federal law and therefore he is not entitled to relief on this claim.

> **(3)    Petitioner Was Not Denied Due Process In Connection With Officer Fuqua's Alleged Denial of Plaintiff's Rights to Submit a Witness Statement, Call Witnesses, Submit a Written Statement, and Present Documentary or Physical Evidence**

Petitioner also contends his due process rights were violated when Officer Fuqua denied him the right to submit a witness statement, to call witnesses, to present documentary or physical evidence or to submit a written statement as part of the disciplinary record. As the state court properly concluded in denying Petitioner's petition for a writ of mandamus, this argument is specifically contradicted by the record.

In denying this ground for relief, the state court noted: "Although the Petitioner argues that his statement was not taken during the investigation, the witnesses were

12

not interviewed, and that he did not have an opportunity to request physical or documentary evidence, the records shows that the petitioner was offered the opportunity to do all these things but refused to participate in the investigation." App. Exh. G at 3.

The record supports the state court's conclusion on this ground. Petitioner told Officer Fuqua to "go to G Dorm and ask who would be his [Petitioner's] witness" before Petitioner would sign the disciplinary charge sheet or participate in the investigation. App. Exh. B at 14. Officer Fuqua refused Petitioner's demand and Petitioner then refused to cooperate with the investigation, telling Fuqua "I ain't doing or giving you shit then." *Id.* Due to Petitioner's refusal to be interviewed, Officer Fuqua filled out a Witness Statement form indicating Plaintiff refused to be interviewed. *Id.* at 17-18. Officer Fuqua also offered Petitioner the opportunity to call witnesses and present documentary or physical evidence on his behalf, but Petitioner also refused this. *Id.* at 18, 20. Petitioner's refusal is reflected in the Witness Disposition and Documentary or Physical Evidence Disposition forms prepared by Officer Fuqua. *Id.*

Petitioner correctly notes in his Reply (Doc. 14) that FDOC rules require an officer investigating a DR to ask the inmate if the inmate has any witnesses to offer on the inmate's behalf. *See* FLA. ADMIN. CODE ANN. R. 33-601.305(2)-(3)(Investigating officer must ask the inmate if he has any witnesses or evidence to offer and "[i]f the inmate requests a large group of inmates as witnesses (e.g. an entire dorm), the investigating officer shall interview a random sample of the requested witnesses and document such on" the Witness Disposition form.). An inmate's due process rights can be violated if a correctional officer investigating a disciplinary report refuses to interview

13

specific individuals a prison inmate requests the officer interview.  *See, e.g., Ayers v. Ryan*, 152 F.3d 77, 81 (2d Cir. 1998)(investigating officer violated inmate's due process rights by failing to obtain the testimony of witnesses requested by inmate during disciplinary hearing).   Prisoners, however, do not have an unlimited right to request witnesses, as prison officials have discretion to refuse to call witnesses requested by an inmate and to limit an inmate's access to other inmates to collect statements or compile documentary evidence.  *See Wolff*, 418 U.S. at 566.

In this case, Petitioner did not ask Officer Fuqua to interview specific inmates in cells adjacent to where the fight had taken place, but instead made a blanket demand that Officer Fuqua canvass the entire dorm (not the quad) to see who would be a witness for Petitioner.  App. Exh. B at 14.  Petitioner did not ask Officer Fuqua to interview all inmates in the dorm, but only requested Fuqua to see "who would be a witness for" Petitioner, in essence telling Fuqua to find him witnesses rather than requesting interviews of a specific group of inmates.  Officer Fuqua's failure to interview every inmate in the dorm in which the fight took place was not a due process violation, as he did not interfere with Petitioner's ability to marshal evidence or present a defense. Instead, Officer Fuqua reasonably refused a request to construct Petitioner's defense for him by finding Petitioner witnesses.

The state court's denial of this ground is afforded a presumption of correctness, and Petitioner has failed to rebut that presumption by clear and convincing evidence. *See* § 2254(e)(1).  He does not offer any facts in support of this claim, other than general statements that Officer Fuqua's statements regarding Petitioner's refusal to be interviewed, cooperate with the investigation, and request witnesses or present physical

or documentary evidence were "false" and "self-serving." Doc. 14 at 6. Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

### (4) Petitioner's Due Process Rights Were Not Violated Where the Disciplinary Team Allegedly Did Not Consider His Defenses

In the Petition, Petitioner also alleges his due process rights were violated when the disciplinary team did not consider his claim of a "spontaneous reflective defense" or his claim of self-defense. This argument is frivolous and unsupported by the record.

According to Petitioner, his part in the fight was due either to a "spontaneous reflective defense" or self-defense. In denying relief on this ground, the state court concluded this ground was not a violation of due process and also noted: "Further, self-defense is not a mitigating factor in prison disciplinary proceedings. See Rule 33-601.314(2-4), Fla. Admin. Code." App. Exh. G at 3-4.

The state court's rejection of Petitioner's due process claim regarding his "spontaneous reflective defense" and his claim of self-defense was proper. The disciplinary team afforded Petitioner the ability to raise this defense or any other defenses he wished to raise. The disciplinary team's report specifically referenced Petitioner's own statement at the disciplinary hearing that "he was punched then comenced [sic] to whipping [Petitioner's cellmate] Washington's ass," which evidences that the disciplinary team considered his claim of self-defense. App. Exh. B at 22. Furthermore, even if the disciplinary team had prohibited Petitioner from presenting a defense of self-defense the failure to do so would not have constituted a violation of the Petitioner's due process rights. *See Rowe v. DeBruyn*, 17 F.3d 1047, 1053 (7th Cir. 1994)(state did not violate prisoner's due process rights when it prevented him from raising self-defense as a defense to prison disciplinary charges).

Petitioner has not shown that the state court's rejection of this due process claim regarding the denial of his ability to present his "spontaneous reflective defense" or claim of self-defense was contrary to, or an unreasonable application of, federal law. Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

**(5)   Petitioner Was Not Denied Due Process Where the DR's Statement of Facts Did Not List all the Officers Who Purportedly Witnessed the Fight between Petitioner and his Cellmate**

Petitioner also contends that his due process rights were violated because the names of all the officers – other than Sergeant Assmann who allegedly witnessed the fight – were not listed in the DR's Statement of Facts. This claim is also without merit.

The state court correctly determined Petitioner's due process rights were not violated with respect to this claim. App. Exh. G at 3. The state court stated its order denying Petitioner's petition for a writ of mandamus: "Moreover, regarding the petitioner's claim that the disciplinary report did not list staff witnesses, the Department's rule no longer requires that the staff witnesses be listed in the disciplinary's reports statement of facts." *Id.*

It is unclear from the record that there were even any other staff members aside from Sergeant Assmann nearby when Petitioner and his cellmate were engaged in their fight. Aside from his own conclusory allegation, Petitioner does not point to any facts or evidence which would suggest correctional officers other than Sergeant Assmann indeed witnessed the fight. More importantly, however, and as the state court also recognized, there was no requirement that the DR list all staff members who witnessed the fight even if correctional officers other than Sergeant Assmann witnessed the fight. *See* FLA. ADMIN. CODE ANN. R. 33-601.304(2)(2)("The statement of facts shall include:

16

(a) A description of the violation, including date, time and place; (b) The specific rules violated; (c) A formal statement of the charge; (d) Any unusual inmate behavior; (e) Any physical evidence and its disposition; (f) Any immediate action taken; and (g) Any other specific facts necessary for an understanding of the charge.").

Accordingly, Petitioner did not have any due process right to have the names of the unidentified staff witnesses included in the DR. As such, this ground in the Petition is baseless, as the state court correctly noted.

**(6)  Petitioner's Argument That His Due Process Rights Were Violated Based Upon the Argument That Sergeant Assmann Was Not Actually Conducting a Security Check When He Observed the Fight Between Petitioner and His Cellmate Has No Merit**

Petitioner also argues that his due process rights were violated because the DR incorrectly stated Sergeant Assmann was conducting a security check when he witnessed the fight between Petitioner and his cellmate. This ground is patently frivolous, as the state court recognized in denying it. App. Exh. G at 3. Regardless of the purpose of Sergeant Assmann's visit to Petitioner's cell quad at the time of the fight, Sergeant Assman stated both in the DR and to Officer Fuqua that he saw Petitioner fighting with his roommate. App. Exh. B. at 14, 16. There is no violation of Petitioner's due process rights even if Sergeant Assman was visiting the cell for some other reason. Accordingly, the state court's denial of this claim was correct and Petitioner is not entitled to relief on this ground.

**(7)  Petitioner's Claim Regarding His Cell Assignment and Request for a Cell Transfer is Meritless**

Petitioner also argues that his cell assignment was retaliatory and that he

17

requested a cell transfer as a result of his issues with his cellmate, but his transfer request was ignored. As the state court correctly noted in denying this claim, "the record indicates that petitioner did not fill out the paperwork for either placement in protective management or for a new housing assignment until after his disciplinary hearing." App. Exh. G at 3. Petitioner has submitted no evidence which would refute this factual determination by the state court, other than a single grievance on June 10, 2005, in which he stated he had approached several security officers about problems between Petitioner and his cellmate. Doc. 1 Exh. C13. The response to that grievance noted that Petitioner and his cellmate were interviewed prior to being placed in the same cell and were deemed compatible. App. Exh. B at 40. In addition, the response noted Petitioner claimed he had filled out paperwork to be placed in Protective Management, but the official in charge of Protective Management placement requests never received the appropriate paperwork nor were any of the relevant correctional officers notified that Petitioner wished to be placed in Protective Management. *Id.* Accordingly, the state court correctly concluded this claim is without merit and, therefore, Petitioner is not entitled to relief on this issue.

## Conclusion

For the foregoing reasons it is respectfully **RECOMMENDED** that the petition for a writ of habeas corpus, Doc. 1, be **DENIED,** and that a certificate of appealability be

**DENIED**.

**IN CHAMBERS** in Gainesville, Florida this 23rd day of April 2012.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.